# Illinois Official Reports

## Appellate Court

<div style="border:1px solid">

### *Sign Builders, Inc. v. SVI Themed Construction Solutions, Inc.*,
### 2015 IL App (1st) 142212

</div>

| | |
|---|---|
| Appellate Court Caption | SIGN BUILDERS, INC., Plaintiff-Appellee, v. SVI THEMED CONSTRUCTION SOLUTIONS, INC., Defendant-Appellee (Allen Shapiro and Tiptop Builders, Inc., Third-Party Interveners-Appellants). |
| District & No. | First District, Sixth Division Docket No. 1-14-2212 |
| Filed | March 27, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-M1-115374; the Hon. Patrick O'Brien, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Matthew A. Sidor, of Sidor Law, Ltd., of Chicago, for appellants. Stacie E. Barhorst, of Kaplan, Papadakis & Gournis, P.C., of Chicago, for appellees. |
| Panel | PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion. Justices Hall and Lampkin concurred in the judgment and opinion. |

**OPINION**

¶ 1      The intervening petitioners, Allen Shapiro and Tiptop Builders (petitioners), appeal from a circuit court order for a turnover of funds from the defendant, SVI Themed Construction Solutions (SVI), to the plaintiff, Sign Builders, Inc., in satisfaction of an underlying judgment obtained by Sign Builders against SVI. The petitioners argue that the allowance of the turnover was error, because they possessed a perfected security interest in SVI's assets which predated and otherwise took priority over the lien arising from the underlying judgment. For the reasons that follow, we affirm.

¶ 2      In March of 2011, Sign Builders filed a breach of contract action against SVI seeking to recover amounts allegedly due for merchandise and services it provided to SVI. SVI failed to answer or otherwise appear, and the court entered a default judgment against it and set the matter for a prove-up hearing on July 13, 2011. When SVI failed to appear at the prove-up, the court entered judgment in favor of Sign Builders in the amount of $11,303, plus costs.

¶ 3      On November 20, 2013, Sign Builders issued a citation to discover assets against The Private Bank, seeking information relating to any accounts or property held on behalf of SVI. Service of the citation was effectuated upon a representative of Private Bank at some time in early December of 2013.

¶ 4      On December 17, 2013, the petitioners filed a petition to intervene in the underlying action between Sign Builders and SVI, alleging that they held a "superior perfected" lien under the Uniform Commercial Code (UCC) (810 ILCS 5/1-101 *et seq.* (West 2010)) on all property owned by SVI and that they could be adversely affected by any disposition of such property. On February 4, 2014, the court granted the petition to intervene.

¶ 5      On February 25, 2014, the court entered an order referencing a proposed petition by Sign Builders for a turnover of all SVI assets held by Private Bank. The order set a briefing schedule for this petition and mandated that "Tiptop" produce a copy of any loan, note or other evidence of SVI's indebtedness to it and that, in the interim, all funds being held by Private Bank remain frozen.

¶ 6      On March 8, 2011, the petitioners filed their objection to the turnover of any funds held by Private Bank, again claiming that they maintained a superior perfected interest on all property owned by SVI. The petitioners attached a "Demand Line of Credit" note (Note) dated February 9, 2007, executed by SVI and payable to Shapiro as nominee, in the amount of $200,000 plus accrued interest. The note was secured by an agreement (security agreement), also dated February 9, 2007, which assigned as collateral all of SVI's assets, "including *** inventory, chattel paper, accounts, equipment and general intangibles" as further specified therein. The location of the collateral was identified as SVI's address, 6115 Monroe Court in Morton Grove. The petitioners also attached three UCC financing statements (hereinafter UCC liens), two of which were dated February 28, 2007, and the third dated December 7, 2011, identifying Shapiro as the secured creditor. Finally, the petitioners submitted an affidavit by Shapiro, averring that the petitioners maintained a superior perfected interest in all property owned by SVI by virtue of the Note, and that, as of March 17, 2014, SVI owed the petitioners $268,053.

¶ 7      The Note did not contain any particular terms as to payment installments, but provided that "[t]he indebtedness evidenced by this Note shall immediately be due and payable upon demand" of lender Shapiro. The Note further stated, in relevant part, as follows:

"It is agreed that the failure to pay the principal or interest when due in accordance with the terms hereof shall constitute an event of default ('Default') hereunder. Upon the occurrence of a Default, then, at any time, with or without notice of such Default from Lender to Borrower, at the election of holder or holders hereof, the principal sum remaining unpaid hereunder, together with accrued interest thereon, shall become at once due and payable \*\*\* and Lender may proceed to foreclose any security agreement or mortgage, [or] to exercise any other rights and remedies available to Lender \*\*\*.

\* \* \*

No act of omission or commission of Lender, including specifically any failure to exercise any right, remedy or recourse shall be deemed to be a waiver or release of the same; any such waiver or release is to be effected only through a written document executed by Lender \*\*\*."

¶ 8    With regard to the collateral, the security agreement permitted SVI to retain the full right to use and possess it "until a default occurs." The agreement further granted Shapiro the right to foreclose upon the security agreement or invoke remedies as a secured party, but restricted that right to the event of default.

¶ 9    In response to the objection to turnover, Sign Builders did not specifically challenge the petitioners' assertion that they held a superior and perfected lien on the assets in Private Bank. Rather, the gist of Sign Builders' argument was that the petitioners had never declared SVI to be in default on the Note and had never otherwise exercised any of its rights to collect under the Note or the security agreement. In addition, Sign Builders pointed out that Tiptop's president, Howard Dardick, was also the president of SVI and that, accordingly, the petitioners' objection to a turnover of SVI's assets constituted an effort to impair the ability of Sign Builders to collect on its judgment while the petitioners simultaneously sat dormant upon their own rights under their purported perfected security interest.

¶ 10    In reply, the petitioners contended that their forbearance in collecting on SVI's debt did not constitute a waiver of their rights under the security agreement, because the agreement vested the petitioners with a continuing security interest in the collateral "without the need to satisfy any preconditions or prequalifications." Accordingly, the petitioners maintained, their choice to disregard a default by SVI was merely an effort to allow SVI a chance to improve its business to better pay off its debts, as authorized under the case of *Davis v. F.W. Financial Services, Inc.*, 317 P.3d 916 (Or. Ct. App. 2013).

¶ 11    On April 8, 2014, following a hearing,[1] the trial court entered an order which, *inter alia*, denied the petitioners' objection to a turnover of the funds held in Private Bank and mandated that Private Bank relinquish those funds to Sign Builders in satisfaction of the underlying judgment. The petitioners subsequently moved for reconsideration of that order, but the trial court denied the motion concluding that, under the case of *One CW, LLC v. Cartridge World North America, LLC*, 661 F. Supp. 2d 931 (N.D. Ill. 2009), the petitioners had failed to exercise their rights to SVI's accounts or assets under the security agreement and therefore had waived any basis to object to the release of those assets to Sign Builders. The instant appeal followed.

---

[1]The transcript of this hearing has been omitted from the record on appeal.

- 3 -

¶ 12 The petitioners first argue that the court erred in interpreting *One CW*, 661 F. Supp. 2d 931, to support the turnover of funds from Private Bank to Sign Builders, where the petitioners held a superior perfected interest in those funds.

¶ 13 In *One CW*, judgment creditor One CW sought to satisfy a portion of its judgment against a third party by recovering money held in that party's bank account at Signature Bank. However, Signature Bank claimed a priority interest in the account based upon a previous loan it had made to the judgment debtor. While not disputing that Signature Bank held a perfected, priority interest in the account, One CW argued that Signature's own actions in failing to exercise its rights in the security interest in the face of the judgment debtor's default on the loan barred it from making any claim against the interest. The court agreed, holding that, because Signature Bank opted not to pursue its rights and remedies despite the judgment debtor's default, the bank did not have a present right to the funds held in that account, nor a basis to object to their release. *One CW*, 661 F. Supp. 2d at 935; see also *S.E.I.U. Local No. 4 Pension Fund v. Pinnacle Health Care of Berwyn LLC*, 560 F. Supp. 2d 647 (N.D. Ill. 2008).

¶ 14 The petitioners argue that *One CW* is inapplicable to the case at bar, because (1) unlike the bank in that case, the petitioners did not have access to the funds in Private Bank and could not freeze them; (2) the security agreement here expressly provided that any waiver could only occur in writing by the petitioners.

¶ 15 In response, Sign Builders initially argues that the petitioners had no perfected security interest in the Private Bank account in the first instance. Sign Builders admits that, before the trial court, it failed to dispute the petitioners' assertion that they had such a perfected interest. Nonetheless, it urges that we consider this issue as a basis appearing of record to affirm the decision of the trial court. *In re Marriage of Sanda*, 245 Ill. App. 3d 314, 321 (1993). The petitioners have not disputed this contention on appeal. As explained below, we agree with Sign Builders.

¶ 16 Under section 2-1402 of the Code of Civil Procedure (Code), once a judgment creditor serves the judgment debtor with a citation to discover assets, a judgment lien is perfected on those assets of the debtor which are not otherwise exempt under law. 735 ILCS 5/2-1402(a), (m) (West 2010); *TM Ryan Co. v. 5350 South Shore, L.L.C.*, 361 Ill. App. 3d 352, 358-59 (2005); *Pontikes v. Perazic*, 295 Ill. App. 3d 478, 484 (1998). In general, however, a competing claim to those assets by a secured creditor will take priority over a lien creditor, *provided* the secured creditor has perfected its lien. See 810 ILCS 5/9-317(a) (West 2010); *Marquette National Bank v. B.J. Dodge Fiat, Inc.*, 131 Ill. App. 3d 356, 361 (1985) (citing James J. White & Robert S. Summers, Uniform Commercial Code § 25-2, at 1031 (2d ed. 1980)). If the lien attaches before the security interest has been perfected, the lien creditor will prevail. *Nova Chemicals, Inc. v. Frawley*, No. 02 C 3661, 2003 WL 22382998, at *3 (N.D. Ill. Oct. 16, 2003).

¶ 17 Section 9-314 of the UCC states as follows with regard to perfecting a secured interest:

"(b) Specified collateral: time of perfection by control; continuation of perfection. A security interest in deposit accounts *** is perfected by control under Section *** 9-104 *** when the secured party obtains control and remains perfected by control only while the secured party retains control." 810 ILCS 5/9-314(b) (West 2010).

¶ 18 Section 9-104 states:

"(a) Requirements for control. A secured party has control of a deposit account if:

> (1) the secured party is the bank with which the deposit account is maintained;
>
> (2) the debtor, secured party, and bank have agreed in an authenticated record that the bank will comply with instructions originated by the secured party directing disposition of the funds in the deposit account without further consent by the debtor; or
>
> (3) the secured party becomes the bank's customer with respect to the deposit account." 810 ILCS 5/9-104(a) (West 2010).

¶ 19   In this case, the sole evidence of any secured interest by the petitioners in SVI's assets is the Note and accompanying security agreement, neither of which contain any reference to an account with Private Bank or any other bank. Shapiro's affidavit states in a conclusory fashion that the petitioners possessed a superior, perfected security interest in "all property owned by SVI." However, there is no suggestion in the record that the petitioners ever complied with any of the UCC criteria articulated above as necessary to initially perfect the secured interest, and then to maintain the perfection of that interest, in a deposit account. In fact, the petitioners have admitted that they "did not have access to the account held by Private Bank" and in fact were unaware of the account until being served with the citation to discover assets. Even at that point, they merely sought to intervene in the underlying action simply to prevent Sign Builders from acting on its judgment lien, stopping short of accelerating their own collection efforts. Under the facts of this case, we find, as a matter of law, that the petitioners have failed in their burden to prove that they had a secured, perfected interest in the SVI funds held in Private Bank under the UCC. See *Rose Acre Farms, Inc. v. Decatur County Farm Bureau Cooperative Ass'n*, 467 N.E.2d 26 (Ind. Ct. App. 1984).

¶ 20   Based upon our determination, we need not reach the petitioners' alternative arguments on appeal.

¶ 21   Affirmed.