**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220283-U

Order filed August 16, 2023

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| USS-UPI, LLC, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Du Page County, Illinois, |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | Appeal No. 3-22-0283 |
| MILLENIA PRODUCTS GROUP, INC., d/b/a | ) | Circuit No. 22-LA-276 |
| MILLENIA METALS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | Honorable |
| (Walker West, LLC and Walker Midwest, LLC, | ) | Neal W. Cerne, |
| Appellants). | ) | Judge, Presiding. |

JUSTICE PETERSON delivered the judgment of the court.
Presiding Justice Holdridge and Justice Albrecht concurred in the judgment.

**ORDER**

¶ 1        *Held*:   The court erred by failing to hold an evidentiary hearing.

¶ 2        Appellants, Walker West, LLC and Walker Midwest, LLC (collectively Walker), appeal

from the Du Page County circuit court's order providing for First Midwest Bank (First Midwest)

to turnover funds from a bank account held in defendant Millenia Products Group, Inc.'s

(Millenia) name to plaintiff USS-UPI, LLC (USS-UPI) in satisfaction of a judgment USS-UPI obtained against Millenia. Walker argues that they owned the funds in the account after purchasing the account in a Uniform Commercial Code (UCC) article 9 sale. Alternatively, Walker argues that if the documents it submitted to the circuit court were insufficient to establish it owned the funds in the account, then the court should have conducted an evidentiary hearing. We reverse and remand for an evidentiary hearing.

¶ 3                                    I. BACKGROUND

¶ 4        On March 23, 2022, USS-UPI filed a petition for registration of foreign judgment. It sought to register a judgment in the amount of $346,384.57 that it had obtained against Millenia in California on January 14, 2022. On April 7, 2022, USS-UPI issued a citation to discover assets to Millenia, which prohibited Millenia from making or allowing any transfer or other disposition of property not exempt from enforcement of its judgment. On May 13, 2022, USS-UPI issued a third-party citation to discover assets to First Midwest. On May 24, 2022, USS-UPI filed a motion for entry of turnover order based upon First Midwest's response to the citation, which indicated it held funds owned by Millenia. USS-UPI attached First Midwest's citation response, which indicated the funds were held in a "Checking and/or Now Account."

¶ 5        Walker filed a response to the motion for entry of turnover order and request for release of citation. Walker argued that the motion for entry of turnover order should be denied because (1) the account was sold pursuant to a valid UCC article 9 sale such that the account was no longer Millenia's property; (2) the account was already subject to Big Shoulders Capital II, LLC's (Big Shoulders) security interest, which was perfected by a Deposit Account Control Agreement (DACA) between Millenia, First Midwest and Big Shoulders; and (3) the funds in the account stem from Millenia's accounts receivable and Big Shoulders already had a perfected

2

security interest in Millenia's accounts receivable. In support of its response, Walker attached as exhibits: (1) UCC financing statements indicating Big Shoulders was a secured party and Millenia was its debtor; (2) the DACA between First Midwest, Millenia, and Big Shoulders, although it did not contain an "Exhibit A" which was referenced therein; (3) the notice of public sale issued on behalf of Big Shoulders; and (4) the secured party bill of sale dated May 6, 2022, and entered into between Walker and Big Shoulders. The UCC filing statements listed the collateral as (1) "All assets, personal property, fixtures, rights and interests of Debtor, whether now existing or hereafter arising or acquired and wherever located," (2) "All of Debtor's equity interests of Integrity Metals, LLC, an Illinois limited liability company," and (3) "Equipment generally described in attached schedule A-1 financed by secured party pursuant to a master loan and security agreement with JPMorgan Chase Bank, NA. Whether now or hereafter acquired, together with all attachments, additions, accessions, parts, repairs, improvements, replacements and substitutions thereto, together with all proceeds thereof." The UCC financing statements also indicated that JPMorgan Chase Bank was the original secured party but it assigned its rights to Big Shoulders. The DACA showed that Millenia granted Big Shoulders "a security interest and lien upon all or substantially all assets of [Millenia], including without limitation, [Millenia's] interest in any and all deposit accounts from time to time established by [Millenia]." It further provided that Millenia "has established one or more deposit accounts in which cash, checks, money orders and other items of value (the "*Items*") of [Millenia] are held for deposit by [First Midwest] (collectively, the "*Deposit Account*"), which accounts are identified on *Exhibit A* attached hereto and incorporated herein by reference." The DACA provided that Millenia gave Big Shoulders a first lien security interest in the deposit account and "all cash, checks, money orders, drafts, notes, collection remittances and other items of value of [Millenia] *** deposited,

3

credited, held *** or otherwise in the possession or under the control of, or in transit to, [First Midwest] or any agent, bailee or custodian thereof (collectively, "*Receipts*"), and all proceeds of the foregoing (collectively, the "*Collateral*")." Additionally, the DACA stated that First Midwest, on behalf of Big Shoulders, "shall be entitled to exercise, upon the written instructions of [Big Shoulders], any and all rights which [Big Shoulders] may have under the Loan Agreement *** with respect to the Deposit Account and all Receipts and all other Collateral." The DACA stated that the deposit account was "subject to the sole dominion, control and discretion of" Big Shoulders and that on each business day First Midwest would transfer all available balances in the deposit account to Big Shoulders. The notice of public sale indicated the sale would be conducted on April 13, 2022. It listed all of the collateral that would be sold, including all assets pledged under the financing documents, and specifically noted that it included all deposit accounts and accounts receivable. The notice further provided that the collateral did not include any of Millenia's assets in which Big Shoulders did "not have a first priority security interest." The secured party bill of sale indicated that the sale had occurred between April 13 and 15, 2022. It stated that Walker accepted "assignment from [Big Shoulders], free and clear of [Big Shoulders'] liens, claims and interests, of all of [Millenia's] right, title and interest in and to the following collateral pledged by [Millenia] to [Big Shoulders] and which is subject to [Big Shoulders'] senior security interest" and then listed the various items bought, including all deposit accounts and accounts receivable.

¶ 6    Millenia filed a concurrence with Walker's response to the motion for entry of turnover order and request for release of citation. USS-UPI filed a reply in support of its motion arguing that Walker failed to present evidence that the account was subject to Big Shoulders' perfected security interest and that if the funds were now the property of Walker, Walker is responsible for

4

the judgment because either Walker is a mere continuation of Millenia or the sale was a fraudulent transfer with the intent of defrauding Millenia's creditors. USS-UPI attached as exhibits to its reply the transcripts from the UCC sale, the asset purchase agreement selling Millenia's assets, the DACA, including the Exhibit A referenced therein, and various documents related to the alleged relationship between Walker and Millenia. Exhibit A listed the type of account subject to the DACA as a cash collateral account. The asset purchase agreement listed Millenia as the seller and Walker Manufacturing Group, LLC as the purchaser. Walker filed a sur-reply arguing the account was sold to it before USS-UPI issued its citation to First Midwest and that if USS-UPI wished to attack the sale and Walker's ownership of the account it must do so in a separate proceeding. Walker further noted that although it did not believe it was necessary, it could prove at an evidentiary hearing that the funds in the account came from Millenia's accounts receivable, which were subject to Big Shoulders' security interest. Walker attached an amended asset purchase agreement, which included Walker as a purchaser.

¶ 7 At the hearing on the motion, Walker noted various times that although it believed the documents it submitted were sufficient, they could have an evidentiary hearing. In doing so, Walker indicated it could have someone from First Midwest testify at such a hearing. This included an instance when it referenced an affidavit from First Midwest, which ultimately was not allowed to be attached to the sur-reply. The court, in providing its ruling, stated that it was "not ruling on whether or not this sale was properly or improperly conducted. I can't do that." The court noted that it was unclear whether the relevant account was part of the sale. The court referenced the DACA and stated that Big Shoulders had the ability to control the account but "apparently they chose not to do that." It stated that "it seemed to me that, if you are buying this, you'd transfer the assets to your new name as soon as possible." Based on these observations, the

5

court found that it was *prima facie* evidence that Millenia owned the account. The court stated that it disagreed that the bill of sale changed the ownership of the account and that the owner of the account was the name on the account—Millenia. The court granted USS-UPI's motion for a turnover order without conducting an evidentiary hearing.

¶ 8        Walker filed an emergency motion for reconsideration of the turnover order and to stay the same. The motion argued that the court erred by finding that Big Shoulders failed to exercise control over the relevant account and that the fact that the account remained in the name of Millenia after the sale meant it was still Millenia's. It argued that Big Shoulders, as successor in interest to JPMorgan Chase Bank, N.A. had a security interest in all of Millenia's assets. Walker noted that the security agreement, which it attached as an exhibit, expressly granted a security interest in all accounts, cash or cash equivalents, and all deposit accounts. Walker further argued that, to the extent the court did not believe the information it reviewed was sufficient or required additional explanation, the court could have ordered an evidentiary hearing. Walker specifically requested that the court reconsider its turnover order or alternatively, set an evidentiary hearing on the matter.

¶ 9        At the hearing, Walker again stated various times that they were willing to have an evidentiary hearing and that it would be willing to present someone from First Midwest at an evidentiary hearing. The court told Walker that it was Walker's burden of proving that Millenia did not own the account. It noted that Big Shoulders could only sell what it had a secured interest in and Walker argued that Big Shoulders had a secured interest in the account. USS-UPI argued that no one, including the bank, had identified what account the funds were in, such that it did not indicate that the account was associated with the DACA. The court further noted that "[a] lot of it is just whatever counsel is indicating is the case" and that Walker had not proven the funds

6

were in the account that was part of the DACA. Millenia's counsel informed the court that Millenia has no assets and everything was sold. The court again noted that the name on the account had not changed and questioned whether the account was sold. The court denied the motion to reconsider and declined to hold an evidentiary hearing. In providing its findings, the court stated that it did not know if the account belonged to Millenia but that it did not believe there was enough evidence presented to overcome the presumption that it was Millenia's because it was titled in Millenia's name. Walker again advised the court that in its original objection it advised the court it was willing to put on evidence at an evidentiary hearing if the court needed it. The court responded that it was not the court's job to tell the attorneys what it needs and that allowing an evidentiary hearing would be giving Walker a second chance. Walker responded that its original point was that it believed the bill of sale was sufficient but if it was not, then it welcomed and still welcomed an evidentiary hearing. Walker requested an evidentiary hearing. The court declined to hold an evidentiary hearing. Walker appeals.

¶ 10                                   II. ANALYSIS

¶ 11          Walker argues that the court erred by ordering turnover because it bought the account in the UCC article 9 sale, such that it was no longer Millenia's property. Alternatively, Walker argues that the court committed reversible error by failing to hold an evidentiary hearing. USS-UPI argues that the court properly ordered turnover because Walker had not met its burden of showing the account was sold. USS-UPI also argues that the matter should not be sent back for an evidentiary hearing because Walker invited the purported error of not holding an evidentiary hearing.

¶ 12          The rule of invited error prevents a party from raising an "error which that party induced the court to make or to which that party consented." *In re Detention of Swope*, 213 Ill. 2d 210,

7

217 (2004). Here, although Walker repeatedly stated that it believed the bill of sale was sufficient to show that it owned the bank account it also repeatedly offered to have, and requested, an evidentiary hearing if the court did not believe the bill of sale was sufficient. Aside from the bill of sale, Walker raised other reasons it believed that turnover was inappropriate, including different ways it alleged Big Shoulders had a perfected security interest in the account and specifically advised the court it was willing to provide testimony from First Midwest to support its position. Thus, we cannot say that Walker induced, or consented to, the court deciding the matter as it did without an evidentiary hearing.

¶ 13        Walker argued that all of Millenia's assets were sold at the UCC sale, such that it bought the account. Alternatively, Walker argued that if somehow the account was not sold, USS-UPI was not entitled to the account because Big Shoulders had a perfected security interest in the account. Here, the notice of sale and bill of sale both indicate that the only property sold was that which Big Shoulders had a first priority security interest in, such that Walker needed to establish the first priority security interest in order to show the account was sold. Walker likewise needed to show Big Shoulders had a perfected security interest in the account under its alternative argument.[1]

¶ 14        Generally, to ensure that a party has a first priority security interest, the party's interest must be first to attach and/or be perfected. Specifically, "[s]ection 9-322(a) of the U.C.C. sets forth the general priority rules for conflicting security interests and provides that: (1) the first secured party who files *** or perfects *** has priority; (2) a perfected security interest has priority over an unperfected one; and (3) if both security interests are unperfected, the first to

_____

[1]We note that the circuit court relied heavily on the fact that the account was under Millenia's name. However, that fact is largely irrelevant when the main inquiry in this matter is whether Big Shoulders had a perfected security interest in the account, such that it could have sold the account during the UCC sale and if, in fact, it did sell such account.

8

attach has priority." *First Bank v. Unique Marble and Granite Corp.*, 406 Ill. App. 3d 701, 708 (2010). Additionally, "as a general rule, the holder of a perfected security interest takes priority over the interests of unsecured creditors." *Midwest Decks*, *Inc. v. Butler & Baretz Acquisitions*, *Inc.*, 272 Ill. App. 3d 370, 377 (1995). As relevant to the specific facts of this case, "once a judgment creditor serves the judgment debtor with a citation to discover assets, a judgment lien is perfected on those assets of the debtor which are not otherwise exempt under the law." *Sign Builders*, *Inc. v. SVI Themed Const. Solutions*, *Inc.*, 2015 IL App (1st) 142212, ¶ 16. "[A] competing claim to those assets by a secured creditor will [generally] take priority over a lien creditor, *provided* the secured creditor has perfected its lien" but "[i]f the lien attaches before the security interest has been perfected, the lien creditor will prevail." *Id.*

¶ 15        Walker argued that it had established Big Shoulders' perfected security interest by way of the DACA. See *e.g.*, 810 ILCS 5/9-314 (West 2022) (providing that a security interest in a deposit account is perfected when the secured party obtains control); 810 ILCS 5/9-104(a) (West 2022) (providing requirements for control). Alternatively, Walker argued that the account could be traced to Millenia's accounts receivable and that Big Shoulders had perfected its security interest in the accounts receivable through the filed financial statements. See *e.g.*, *id.* § 9-310 (providing for perfection of security interests through the filing of a financing statement); *Midwest Decks*, 272 Ill. App. 3d at 377 ("Once the interest in the original collateral is perfected, the security interest in the proceeds from the collateral is also perfected."). However, the exhibits failed to clearly establish that the account was subject to the DACA or that all of the money in the account was traceable to Millenia's accounts receivable.

¶ 16        Specifically, although the DACA tends to indicate Big Shoulders had control over a specific account, and potentially all accounts, of Millenia at First Midwest, it is not clear from

9

the face of the DACA. The DACA appears to provide that Big Shoulders could exercise some control, consistent with its rights under its loan/security agreement, over all accounts/funds Millenia had at First Midwest; however, it only specifically provided that the account listed in Exhibit A was "subject to the sole dominion, control and discretion of" Big Shoulders. Because of the different ways the account listed in Exhibit A and the rest of Millenia's accounts were treated under the DACA it is unclear what level of control Big Shoulders had over any accounts not listed in Exhibit A and thus, unclear if it was sufficient to perfect its interest in any such accounts. Further, First Midwest did not identify the specific account in which it held the funds identified in its response to the citation such that it is unclear whether such funds are in the account listed in Exhibit A. Additionally, Walker has acknowledged that it would need to present testimony in order to establish that the money in such account was from Millenia's accounts receivable. Thus, factual questions remained in this regard. Notably, if Big Shoulders' security interest in the account at First Midwest was not perfected at the time USS-UPI issued its citation to Millenia on April 7, 2022, then the account could not have been included in the sale that took place nearly a week later because the sale only included items that Big Shoulders had a first priority interest in and USS-UPI would have had a lien on the account that would take priority over an unperfected interest in the account. See *Sign Builders*, *Inc.*, 2015 IL App (1st) 142212, ¶ 16. In addition to the factual issues regarding perfection, USS-UPI also raised a factual issue regarding assets excluded from the UCC sale. Due to the unresolved and disputed factual issues, it was improper for the court to decide the motion for turnover order without holding an evidentiary hearing. See *Workforce Solutions v. Urban Services of America*, *Inc.*, 2012 IL App (1st) 111410, ¶¶ 41-42 (providing that the failure to hold an evidentiary hearing to resolve factual issues is reversible error where the ownership of assets held by a third-party citation

10

respondent is in dispute). Therefore, we reverse the turnover order and remand for an evidentiary hearing.

¶ 17       We note that USS-UPI also argues that even if the account was sold, it is entitled to the account funds because Walker was a mere continuation of Millenia and/or the sale was a fraudulent transfer and because Walker was not a good faith purchaser. USS-UPI also argues that these claims are properly brought in citation proceedings and cites various cases, including *Kennedy v. Four Boys Labor Service, Inc.* 279 Ill. App. 3d 361, 369 (1996) and *Steel Co. v. Morgan Marshall Industries, Inc.*, 278 Ill. App. 3d 241 (1996), as support. Walker argues that these arguments are improper in the citation proceedings and must be brought in separate proceedings. The court based its ruling on the fact that the account at issue was still in Millenia's name and thus did not reach or specifically rule on whether the mere continuation, fraudulent transfer, and non-good faith purchaser claims were allowed in the citation proceedings. Further, the court did not rule on the merits of these claims. These issues should be ruled upon by the circuit court in the first instance rather than this court and therefore, we decline to address their merits. See *Evergreen Savings & Loan Ass'n*, 65 Ill. App. 3d 492, 497 (1978) ("As a general rule a reviewing court will not reach issues which have not been passed upon by the trial court.").

¶ 18                                   III. CONCLUSION

¶ 19       The judgment of the circuit court of Du Page County is reversed and remanded.

¶ 20       Reversed and remanded.

11