# Illinois Official Reports

## Appellate Court

---

*Caulfield v. The Packer Group, Inc.*, 2016 IL App (1st) 151558

---

| | |
|---|---|
| Appellate Court Caption | EDWARD M. CAULFIELD and MICHAEL G. KOEHLER, Derivatively and on Behalf of The Packer Group, Inc., and Packer Engineering, Inc., Plaintiffs-Appellants, v. THE PACKER GROUP, INC.; PACKER ENGINEERING, INC.; and PACKER TECHNOLOGIES INTERNATIONAL, INC., Defendants (Kenneth F. Packer; Charlotte A. Sartain; Warren K. Denniston; David Packer; Deborah Hockman; Russ Johnson; and William Carroll, Defendants-Appellees). |
| District & No. | First District, Sixth Division Docket No. 1-15-1558 |
| Filed | June 24, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-28475; the Hon. Rita M. Novak and the Hon. Neil Cohen, Judges, presiding. |
| Judgment | Affirmed as modified in part, reversed in part, and remanded. |
| Counsel on Appeal | Locke Lord LLP, of Chicago (Michael H. King, Bilal Zaheer, and Aaron J. Hersh, of counsel), for appellants. |
| | Tressler LLP, of Chicago (James Borcia, of counsel), for appellees Kenneth F. Packer and Charlotte A. Sartain. |
| | Coman & Anderson, P.C., of Lisle (Jeffrey R. Platt, of counsel), for appellee David Packer. |

Huck Bouma, PC, of Wheaton (Kathleen R. Ryding, of counsel), for appellee Russell Johnson.

Ice Miller LLP, of Chicago (John D. Burke and Heather L. Maly, of counsel), for appellees Deborah Hockman and William Carroll.

Panel        PRESIDING JUSTICE ROCHFORD delivered the judgment of the court, with opinion.

Justice Hall and Justice Delort concurred in the judgment and opinion.

**OPINION**

¶ 1        Plaintiffs, Dr. Edward M. Caulfield and Dr. Michael G. Koehler, brought a shareholders' derivative action on behalf of The Packer Group, Inc. (TPG), and Packer Engineering, Inc. (PEI), against defendants, Dr. Kenneth F. Packer, Charlotte A. Sartain, Warren K. Denniston, and David Packer (collectively referred to as the inside directors), who were officers and/or directors of TPG. Plaintiffs sought recovery against the inside directors for breach of their fiduciary duties to TPG and its subsidiaries and also sought recovery of their attorney fees. Plaintiffs later amended their complaint to add additional directors, defendants Dr. Deborah Hockman, Dr. Russell Johnson, and Dr. William Carroll (collectively referred to as the outside directors). The circuit court ultimately entered four orders: (1) striking plaintiffs' request for attorney fees in their second amended complaint; (2) dismissing plaintiff's claims in their second amended complaint against the outside directors; (3) dismissing the claims in plaintiffs' third amended complaint against the inside directors; and (4) denying plaintiffs leave to add additional shareholders as plaintiffs. Plaintiffs appeal the four orders. We reverse in part, affirm in part as modified, and remand for further proceedings.

¶ 2        I. BACKGROUND

¶ 3        TPG was a closely held corporation comprised of three wholly owned subsidiaries: (1) PEI; (2) Packer Environmental and Facility Consultants, Inc.; and (3) Packer Technologies International, Inc. (collectively referred to as the Packer Companies). On July 1, 2010, plaintiffs, Dr. Caulfield, the president and chief technical officer of PEI, and Dr. Koehler, the chief executive officer (CEO) of PEI, filed a shareholders' derivative action on behalf of TPG and PEI against the inside directors: Dr. Kenneth Packer, TPG's founder and chairman of the board of directors; Charlotte A. Sartain, TPG's executive vice president of finance and secretary of the board of directors; and Warren K. Denniston and David Packer, members of TPG's board of directors.

¶ 4        Plaintiffs alleged the inside directors misappropriated and wasted TPG's assets for their own benefit.

¶ 5        Specifically, plaintiffs alleged that Dr. Packer purchased an Illinois company, New Vermillion Ironworks (New Vermillion), in 2007. Dr. Packer financed his purchase of New

¶ 6 Vermillion from his personal line of credit, secured by his personal assets. Dr. Packer became president of New Vermillion, and Ms. Sartain became New Vermillion's corporate treasurer.

¶ 6 During 2008, the value of Dr. Packer's personal assets declined to the point where they were no longer sufficient to secure his personal line of credit. In response to the declining value of Dr. Packer's personal assets, the bank holding his personal line of credit demanded additional security. Rather than provide the additional security, Dr. Packer transferred approximately $357,550 of the outstanding balance on his personal line of credit to TPG's line of credit, in effect switching the debt from himself to TPG. Dr. Packer and Ms. Sartain transferred the debt to TPG without the prior knowledge or approval of the board of directors, Dr. Koehler or Dr. Caulfield.

¶ 7 In March/April 2009, Ms. Sartain admitted to Dr. Koehler that she was concerned about TPG's cash flow. In response, Dr. Koehler began reviewing TPG's financial records and learned that from 2007 to 2009, Dr. Packer and Ms. Sartain often sent PEI employees to work at New Vermillion. Some of these PEI employees worked almost full time at New Vermillion for multiple months while on the PEI payroll. TPG also made a series of unidentified payments on behalf of New Vermillion amounting to more than $1.2 million.

¶ 8 In August 2009, Dr. Packer, Ms. Sartain, and Dr. Koehler attended a meeting with a representative of the bank issuing TPG's line of credit. The bank said that TPG's line of credit was nearly exhausted at $3 million and that the bank would not renew the line of credit unless TPG paid it down and immediately discontinued all payments on behalf of New Vermillion. In September 2009, Dr. Packer, Ms. Sartain, and Dr. Koehler held a meeting with the senior leadership of PEI to discuss controlling costs. During the meeting, Ms. Sartain and Dr. Koehler stated that TPG would stop making payments on behalf of New Vermillion.

¶ 9 However, TPG continued to make unidentified payments on behalf of New Vermillion. Employees on TPG's payroll continued to perform work on behalf of New Vermillion at Dr. Packer's instruction.

¶ 10 In October 2009, TPG's board of directors held a meeting at which Dr. Packer attempted to fire Dr. Koehler from his position as CEO. Dr. Koehler was not allowed to attend this board meeting. Despite Dr. Packer's efforts, the board refused to fire Dr. Koehler.

¶ 11 In December 2009, TPG's board of directors held a meeting to review the independent audit report for TPG for the fiscal years 2007 and 2008 prepared by Sikich LLP. The 2007 audit showed that Dr. Packer owed TPG $870,285; the 2008 audit showed that Dr. Packer owed TPG $748,261. The monies Dr. Packer owed TPG "related to New Vermillion." Sikich LLP prepared an addendum to the 2008 audit, which Dr. Packer and Ms. Sartain deliberately withheld from the board. That addendum provided recommendations for TPG, including that TPG should incorporate certain checks and balances to prevent the ongoing misuse of its finances.

¶ 12 At the December 2009 board meeting, Dr. Koehler relayed his concerns about the significant New Vermillion-related expenses and debt that TPG, at Dr. Packer's direction, had assumed.

¶ 13 In March 2010, Mr. Denniston had a conversation with Dr. Caulfield regarding the New Vermillion debt and expenses. Mr. Denniston told Dr. Caulfield that Dr. Packer would never repay the debt and that the board should declare it a "bad debt" and "write it off" as a tax deduction.

¶ 14    On March 16, 2010, plaintiffs sent a letter to TPG demanding that it form a special committee of the board to investigate Dr. Packer's involvement with New Vermillion. On April 6, 2010, the board appointed an independent special committee of the board, comprised of the outside directors, Dr. Hockman, Dr. Carroll, and Dr. Johnson. The independent special committee contacted Sikich LLP to conduct an audit investigation of TPG, but Dr. Packer refused to guarantee that the auditors would have complete access to all of TPG's books and records.

¶ 15    Dr. Packer then attempted to shut down the investigation, claiming it was not necessary because he had repaid his debt to New Vermillion through two payments, totaling $180,000, and a stock transfer.

¶ 16    The outside directors became concerned that Dr. Packer would control the information provided to the auditors and would not allow a complete and accurate audit of TPG's financials, and they requested that Dr. Packer and Ms. Sartain resign from their positions as officers and directors of TPG. Dr. Packer and Ms. Sartain refused to resign. On April 26, 2010, the outside directors resigned from the board because they believed "it would be futile" to continue their investigation of Dr. Packer's involvement with New Vermillion as long as Dr. Packer and Ms. Sartain continued in their positions within TPG.

¶ 17    On July 1, 2010, plaintiffs filed their shareholders' derivative action against the inside directors. In addition to the allegations set forth above regarding Dr. Packer's dealings with New Vermillion, plaintiffs further alleged: Ms. Sartain has prevented TPG's officers, directors, and shareholders from having access to documents showing Dr. Packer's improper corporate dealings over a number of years; Ms. Sartain has forged employees' signatures on checks and has written checks from TPG's account in order to avoid PEI's requirement that there be two signatories on checks over $5000; the inside directors caused TPG to acquire a product development firm, PTI, of which Dr. Packer was a partial owner, at an inflated price; the inside directors caused TPG to take a $2 million loan for the purpose of paying incentive compensation and paid Mr. Denniston $250,000 from this loan even though he was not a full-time TPG employee; TPG has paid above-market rent to Dr. Packer and David Packer for use of a building that TPG built; TPG is paying for a life insurance policy on Dr. Packer for which it is not the beneficiary; the inside directors have removed the trustee of the employee stock ownership plan (ESOP) and have manipulated the ESOP shares for their own benefit; and the inside directors have improperly awarded themselves additional shares of TPG stock and "manipulated" the value of TPG's assets for the fiscal year 2008 to inflate the value of TPG in the fair market value appraisal report.

¶ 18    Plaintiffs' six-count complaint asserted claims against the inside directors for: (1) breach of fiduciary duties; (2) corporate waste; (3) abuse of control; (4) gross mismanagement; (5) unjust enrichment; and (6) injunctive relief.

¶ 19    On November 19, 2010, plaintiffs moved to file an amended complaint adding 16 other shareholders as additional named plaintiffs. On March 1, 2011, the circuit court denied plaintiffs' motion.

¶ 20    All the Packer Companies went out of business in January 2012. Thereafter, an assignment for the benefit of their creditors was made in May 2012. The assignee, Ronald Mrofka, subsequently sold the Packer Companies' assets and distributed the proceeds to their secured lender, JP Morgan Chase. After that distribution, JP Morgan Chase was still owed more than $1 million by the Packer Companies.

¶ 21    On April 18, 2012, plaintiffs filed a second amended complaint, again asserting a shareholders' derivative action against the inside directors and adding the outside directors as additional defendants. Plaintiffs repeated the allegations of the original complaint and consolidated their claims into one count of breach of fiduciary duties against all defendants and one count of negligence against Ms. Sartain. Plaintiffs also added in count III, a claim of breach of fiduciary duties, against the outside directors for their decision to resign from the board instead of completing the independent special committee's investigation into the inside directors' alleged financial misconduct.

¶ 22    On April 5, 2013, the circuit court dismissed plaintiff's claims against the outside directors in count III of the second amended complaint with prejudice, finding that their resignation from the board did not constitute a breach of their fiduciary duties.

¶ 23    On May 16, 2013, the circuit court struck plaintiffs' demand for attorney fees from the second amended complaint because they did not identify any agreement or statute allowing them to recover such fees.

¶ 24    On October 1, 2014, plaintiffs filed their third amended complaint in which they realleged the claims from the second amended complaint against the inside directors, realleged the claims against the outside directors in order to preserve them for review, and added a request for punitive damages and for attorney fees based on the common fund doctrine.

¶ 25    On March 5, 2015, the circuit court dismissed the third amended complaint's claims against the inside directors on two separate grounds pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2012)). First, the court found that as the Packer Companies are all insolvent, only their creditors can pursue a derivative claim. Since plaintiffs' third amended complaint was brought as a shareholders' derivative action only, and not as a creditors' derivative action, plaintiffs lacked standing to assert their claims. However, the court stated that plaintiffs could bring an amended action basing their standing on their status as creditors, thereby "resolv[ing] the issue of standing."[1] Second, the court found that since plaintiffs have obtained substantial individual judgments against the corporate and individual defendants in other litigation and have been actively pursuing defendants' assets to satisfy those individual judgments, plaintiffs have a significant conflict of interest between their individual interests and the interests of defendants' other creditors and thus cannot adequately represent the interests of the other creditors.

¶ 26    The circuit court ordered defendants to "give notice to the other creditors of the dismissal so that they may intervene and pursue the litigation if they desire." No other creditors intervened.

¶ 27    The circuit court subsequently entered a final order on May 12, 2015, requiring plaintiffs to pay Dr. Packer and Ms. Sartain certain costs in the amount of $409 within seven days, and dismissed the case with prejudice.

¶ 28    Plaintiffs appeal the circuit court's orders: (1) dismissing their third amended complaint against the inside directors; (2) denying their request to add additional shareholders as named plaintiffs; (3) dismissing their claims in the second amended complaint against the outside directors; and (4) striking their prayer in the second amended complaint for attorney fees.

---

[1]Plaintiffs never amended their complaint to base their standing on their status as creditors; all of plaintiffs' complaints based their standing on their status as shareholders.

¶ 29   II. ANALYSIS

¶ 30   A. The Dismissal of Plaintiffs' Third Amended Complaint

¶ 31   First, we address the dismissal of plaintiff's third amended complaint against the inside directors for lack of standing pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2012)). We review *de novo* the circuit court's decision on a motion to dismiss that is based on lack of standing, and we consider whether dismissal was proper as a matter of law. *Matthews v. Chicago Transit Authority*, 2016 IL 117638, ¶ 39.

¶ 32   Plaintiffs' third amended complaint was brought as a shareholders' derivative action. "A derivative action is an action that a corporate shareholder brings on behalf of a corporation to seek relief for injuries done to that corporation, where the corporation either cannot or will not assert its own rights." *Davis v. Dyson*, 387 Ill. App. 3d 676, 682 (2008). Derivative actions " 'are one of the remedies which equity designed for those situations where the management through fraud, neglect of duty or other cause declines to take the proper and necessary steps to assert the rights which the corporation has. The stockholders are then allowed to take the initiative and institute the suit which the management should have started had it performed its duty.' " *Id.* (quoting *Meyer v. Fleming*, 327 U.S. 161, 167 (1946)).

¶ 33   The issue here is whether the corporation's insolvency during the pendency of the shareholders' derivative action divests the shareholders of standing to pursue that action. This is an issue of first impression in Illinois, and thus we look to the decisions of other jurisdictions for guidance and, in particular, to Delaware law. See *Wieboldt Stores, Inc. v. Schottenstein*, 94 B.R. 488, 509 n.29 (N.D. Ill. 1988) ("Illinois courts have often looked to Delaware law for guidance in deciding previously undecided corporate law issues.").

¶ 34   *Production Resources Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772 (Del. Ch. 2004) , and *North American Catholic Educational Programming Foundation, Inc. v. Gheewalla*, 930 A.2d 92 (Del. 2007), as well as cases citing *Production Resources* and *Gheewalla*, are informative.

¶ 35   In *Production Resources*, the Delaware chancery court addressed whether the plaintiff there, a creditor of an insolvent company, could bring a direct claim of breach of fiduciary duty against the company. The chancery court stated:

> "The fact that the corporation has become insolvent does not turn [derivative] claims into direct creditor claims, it simply provides creditors with standing to assert those claims. At all times, claims of this kind belong to the corporation itself because even if the improper acts occur when the firm is insolvent, they operate to injure the firm in the first instance by reducing its value, injuring creditors only indirectly by diminishing the value of the firm and therefore the assets from which the creditors may satisfy their claims." 863 A.2d at 776.

¶ 36   The Delaware chancery court further stated "regardless of whether they are brought by creditors when a company is insolvent, these claims remain derivative, with either shareholders or creditors suing to recover for a harm done to the corporation." *Id.* at 792. The fact of insolvency "does not transform the nature of the claim; it simply changes the class of those eligible to press the claim derivatively, by expanding it to include creditors." *Id.* at 793.

¶ 37   In *Gheewalla*, the Delaware Supreme Court addressed whether creditors of an insolvent corporation could bring direct claims against that corporation for breach of fiduciary duties. The Delaware Supreme Court stated:

"It is well settled that directors owe fiduciary duties to the corporation. When a corporation is *solvent*, those duties may be enforced by its shareholders, who have standing to bring *derivative* actions on behalf of the corporation because they are the ultimate beneficiaries of the corporation's growth and increased value. When a corporation is *insolvent*, however, its creditors take the place of the shareholders as the residual beneficiaries of any increase in value.

Consequently, the creditors of an *insolvent* corporation have standing to maintain derivative claims against directors on behalf of the corporation for breaches of fiduciary duties. The corporation's insolvency makes the creditors the principal constituency injured by any fiduciary breaches that diminish the firm's value. Therefore, equitable considerations give creditors standing to pursue derivative claims against the directors of an insolvent corporation. Individual creditors of an insolvent corporation have the same incentive to pursue valid derivative claims on its behalf that shareholders have when the corporation is solvent." (Emphases in original and internal quotation marks omitted.) *Gheewalla*, 930 A.2d at 101-02.

¶ 38    The Delaware Supreme Court further held that individual creditors of an insolvent corporation have no right to assert direct claims for breach of fiduciary duties against corporate directors, but that creditors "may nonetheless protect their interest by bringing derivative claims on behalf of the insolvent corporation." *Id.* at 103.

¶ 39    Subsequent to *Production Resources* and *Gheewalla*, the Delaware chancery court in *Quadrant Structured Products Co. v. Vertin*, 102 A.3d 155 (Del. Ch. 2014) (*Quadrant I*), and *Quadrant Structured Products Co. v. Vertin*, 115 A.3d 535 (Del. Ch. 2015) (*Quadrant II*), again addressed the issue of creditors' standing to bring a derivative suit upon the corporation's insolvency. In *Quadrant I*, the Delaware chancery court stated in pertinent part:

"As residual claimants and the ultimate beneficiaries of the fiduciary duties that directors owe to the corporation, stockholders have standing in equity to bring claims derivatively on behalf of the corporation for injury that the corporation has suffered. When a corporation is insolvent, its creditors become the beneficiaries of any initial increase in the corporation's value. [*Gheewalla*, 930 A.2d at 101.] The stockholders remain residual claimants, but they can benefit from increases in the corporation's value only after the more senior claims of the corporation's creditors have been satisfied. 'The corporation's insolvency makes the creditors the principal constituency injured by any fiduciary breaches that diminish the firm's value.' [*Gheewalla*, 930 A.2d at 101-02] (internal quotation marks omitted). Because the creditors of an insolvent corporation join the class of residual claimants, 'equitable considerations give creditors standing to pursue derivative claims against the directors of an insolvent corporation.' [*Gheewalla*, 930 A.2d at 102.]" *Quadrant I*, 102 A.3d at 172.

¶ 40    In *Quadrant II*, the Delaware chancery court stated in pertinent part:

"In my view, *Gheewalla* holds that at the point of [insolvency], standing to sue derivatively does not shift from stockholders to creditors. Stockholders do not lose their ability to pursue derivative claims. Rather, the universe of potential plaintiffs expands to include creditors." *Quadrant II*, 115 A.3d at 556.

¶ 41    In accordance with *Gheewalla*, *Production Resources*, *Quadrant I*, and *Quadrant II*, the majority of non-Delaware cases addressing the issue hold that shareholders maintain standing, along with creditors, to bring derivative claims on behalf of insolvent corporations. See

*Hedback v. Tenney (In re Security Asset Capital Corp.)*, 396 B.R. 35 (Bankr. D. Minn. 2008); *Metcoff v. Lebovics*, 977 A.2d 285 (Conn. Super. Ct. 2007); *Patel v. Patel (In re Patel)*, No. 7-10-12627 JA, 2012 WL 2514891 (Bankr. D.N.M. June 25, 2012); *Fleet National Bank v. Boyle*, No. Civ.A. 04CV1277LLD, 2005 WL 2455673 (E.D. Pa. 2005).

¶ 42    We similarly take the majority view and hold, in accordance with Delaware precedent, that a corporation's insolvency expands the class of those eligible to bring a derivative claim to include creditors *in addition to* shareholders. We find further support for our holding in *Paul H. Schwendener, Inc. v. Jupiter Electric Co.*, 358 Ill. App. 3d 65 (2005), in which we held that although corporate officers generally owe a fiduciary duty only to the corporation and its shareholders, "once a corporation becomes insolvent, the fiduciary duty of an officer is *extended* to the creditors of the corporation." (Emphasis added.) *Id.* at 75. *Schwendener*'s holding that the corporation's insolvency *extends* (*i.e.*, enlarges) the corporate officer's fiduciary duties to both shareholders and creditors indicates that both the creditors and the shareholders have standing to bring a derivative suit for breach of those duties. See also *A.G. Cullen Construction, Inc. v. Burnham Partners, LLC*, 2015 IL App (1st) 122538, ¶ 46; *In re Berman*, 629 F.3d 761, 766 (7th Cir. 2011); *In re Doctors Hospital of Hyde Park, Inc.*, 474 F.3d 421, 428 (7th Cir. 2007) (holding that upon the corporation's insolvency, the corporate officer's duty extends from the shareholders to the creditors).

¶ 43    Given our holding that the corporation's insolvency extended the class of those eligible to bring a derivative claim to include creditors as well as shareholders, we reverse the circuit court's finding that plaintiffs here lacked standing to bring their shareholders' derivative action against the inside directors.

¶ 44    Defendants argue, though, that plaintiffs lack standing because the assignment of the Packer Companies' assets for the benefit of their creditors in May 2012 gave the assignee (Mr. Mrofka) the exclusive right to pursue those claims. In a bankruptcy case, the right to bring a derivative action "vests exclusively to the trustee." *In re RNI Wind Down Corp.*, 348 B.R. 286, 293 (Bankr. D. Del. 2006). However, the present case involves an assignment, not a bankruptcy. See *First Bank v. Unique Marble & Granite Corp.*, 406 Ill. App. 3d 701, 707 (2010) ("A debtor may choose to make an assignment for the benefit of creditors, which is an out-of-court remedy, rather than to petition for bankruptcy, because assignments are less costly and completed more quickly."). Defendants cite no cases similarly holding that a derivative action vests exclusively to the assignee when an assignment of assets is made for the benefit of the creditors, so we are not persuaded by defendants' arguments in this regard.

¶ 45    Next, we address the section 2-619 dismissal of plaintiffs' third amended complaint against the inside directors due to their conflicts of interest with the parties they represent. The circuit court determined that plaintiffs had standing to bring the derivative action only as a creditors' derivative action and proceeded to examine whether plaintiffs' interests conflicted with the other creditors. Having determined that plaintiffs had standing to bring their lawsuit as a shareholders' derivative action, we consider whether plaintiffs' interests conflicted with the other shareholders.

¶ 46    A section 2-619 motion to dismiss admits the legal sufficiency of the complaint and raises defects, defenses, or other affirmative matters appearing on the face of the complaint or that are established by external submissions that act to defeat the claim. *Krilich v. American National Bank & Trust Co. of Chicago*, 334 Ill. App. 3d 563, 569-70 (2002). Our review of an order granting a section 2-619 motion to dismiss is *de novo*. *Id.* at 569.

¶ 47    A plaintiff in a shareholders' derivative action "must be qualified to serve in a fiduciary capacity as a representative of the class of stockholders, whose interest is dependent upon the representative's adequate and fair prosecution of the action." *Emerald Partners v. Berlin*, 564 A.2d 670, 673 (Del. Ch. 1989) A derivative plaintiff may be disqualified where there is a conflict between his interests and the interests of the parties he represents. See *Sax v. Sax*, 48 Ill. App. 3d 431, 435 (1977).

¶ 48    The parties here have found no Illinois case law setting forth the factors to consider when determining whether such a conflict exists, but they have cited Delaware case law on the issue, which we may look to for guidance. *Wieboldt Stores, Inc. v. Schottenstein*, 94 B.R. at 509 n.29. Among the elements to be considered are: economic antagonisms between the representative and the shareholders; the remedy sought by the plaintiff in the derivative action; indications that the named plaintiff was not the driving force behind the litigation; the plaintiff's unfamiliarity with the litigation; other litigation pending between the plaintiff and the defendants; the relative magnitude of the plaintiff's personal interests as compared to his interest in the derivative action itself; the plaintiff's vindictiveness toward the defendants; and the degree of support the plaintiff was receiving from the shareholders he purported to represent. *Emerald Partners*, 564 A.2d at 673. A combination of these factors can form the basis of the dismissal of the plaintiff, but a strong showing of one factor is sufficient if it shows a conflict of interest between the plaintiff and the persons he is supposed to represent fairly and adequately. *Id.*

¶ 49    In the present case, other litigation between plaintiffs and defendants, and the relative magnitude of plaintiffs' personal interests as compared to their interest in the derivative action, show that the circuit court committed no error in dismissing plaintiffs' third amended complaint against the inside directors on the basis that there were conflicts between plaintiffs' interests and the interests of the parties they represented.[2]

¶ 50    Specifically, plaintiffs each won individual lawsuits against TPG and PEI at the same time they were pursuing the derivative action. Dr. Koehler was terminated from PEI in May 2010 and subsequently won a $100,000 verdict against TPG and PEI for breach of contract, as well as a verdict in the amount of $1.92 million against Dr. Packer, $355,000 against Ms. Sartain, and $175,000 against Mr. Denniston for tortious interference with contract. The appellate court affirmed. *Koehler v. The Packer Group, Inc.*, 2016 IL App (1st) 142767. Meanwhile, Dr. Caulfield was terminated from PEI in April 2011 and subsequently won a $988,777 verdict against TPG and PEI for breach of contract, as well as a verdict and damages for retaliatory discharge. The appellate court affirmed the judgment and $988,777 award for breach of contract but reversed the judgment for retaliatory discharge and vacated the damages awarded thereon. *Caulfield v. Packer Engineering, Inc.*, 2015 IL App (1st) 140463-U.

¶ 51    Plaintiffs note that in Illinois, "a shareholder may bring a derivative action and an individual claim at the same time if he has suffered a different injury from his fellow shareholders" (*Levy v. Markal Sales Corp.*, 268 Ill. App. 3d 355, 371 (1994)), and, thus, plaintiffs argue that the filing of their individual lawsuits here do not, in and of themselves,

---

[2]In arguing on appeal that there were conflicts between plaintiffs' interests and the interests of the parties they represented, defendants make certain statements about plaintiffs' finances and employment that are unsupported in the appellate record. We have disregarded those statements and consider only the undisputed facts underlying the conflicts issue.

indicate an impermissible conflict with their fellow shareholders. However, once the judgments were entered, a conflict arose because Dr. Koehler issued a citation and turnover request against Federal Insurance Company (Federal), which had been providing a defense in both the individual lawsuit and the derivative lawsuit. See *Caulfield v. Packer Engineering, Inc.*, 2016 IL App (1st) 151329-U.

¶ 52    The Federal policy excludes claims brought by shareholders in an individual capacity. Dr. Koehler asserted throughout the shareholders' derivative case that he was and remains a TPG shareholder. However, when Federal raised the shareholder exclusion in response to Dr. Koehler's motion for turnover in his individual case, he claimed for the first time that he was not a TPG shareholder in order to recover under the policy. This action was taken by Dr. Koehler to further his individual interests over those of the Packer Companies and his fellow shareholders.

¶ 53    In his individual lawsuit, Dr. Koehler also served citations to discover assets on Dr. Packer, Ms. Sartain, and Mr. Denniston, the primary defendants in the derivative lawsuit. In doing so, Dr. Koehler again attempted to collect the same funds that otherwise would have been available in the derivative lawsuit. Dr. Koehler settled his individual claim against Mr. Denniston, with Federal paying $100,000 and Mr. Denniston paying $54,000. All this money went to Dr. Koehler, and none of it went to the insolvent Packer Companies or to any of its shareholders. Additionally, Dr. Caulfield was granted a turnover of the entire remaining limits of Federal's insurance policy for the 2011 time period.

¶ 54    Thus, plaintiffs each have a direct conflict with their fellow shareholders in the derivative lawsuit, as they are acting in their individual cases to collect the remaining assets of the insolvent corporate defendants TPG and PEI at the expense of the shareholders in the derivative action. Accordingly, we affirm the order dismissing plaintiffs' third amended complaint against the inside directors. However, we also modify the dismissal order to require that defendants notify the other stockholders of record on the date of the dismissal and that they be given a time limit within which they may intervene and carry on the litigation. See *Sax*, 48 Ill. App. 3d at 436 (holding that the circuit court has the *sua sponte* duty to condition the dismissal for conflict of interest upon the requirement that notice of the dismissal and an opportunity to intervene be given to the other stockholders). In the present case, the circuit court required that defendants notify the other creditors of the dismissal and their right to intervene; the court never required defendants to so notify the other shareholders.

¶ 55                    B. Plaintiffs' Appeal of the Order Denying Their
                          Motion to Add Additional Shareholders

¶ 56    Plaintiffs appeal the March 1, 2011, order denying them leave to file an amended complaint, adding 16 other shareholders as additional plaintiffs. Our standard of review is for an abuse of discretion. *People v. Allen*, 2016 IL App (1st) 142125, ¶ 18.

¶ 57    Plaintiffs filed their motion for the addition of the 16 shareholders in November 2010, at a time when plaintiffs had not yet filed their individual lawsuits against defendants and had not yet obtained judgments against them and sought collection of those judgments. In response to plaintiffs' motion, defendants filed a response noting that a party is necessary when its presence is required to: (1) protect an interest in the controversy that would be materially affected by a judgment entered in its absence; (2) protect the interests of those who are before the court; or (3) enable the court to make a complete determination of the controversy. See

*Boyd Electric v. Dee*, 356 Ill. App. 3d 851, 859 (2005). Defendants argued that any additional plaintiffs were unnecessary at that time, noting that plaintiffs' amended complaint did not contain any new or different counts, the proposed additional plaintiffs could easily be called as witnesses and did not need to be added to protect their interests or the interests of the other shareholders, and they were not necessary for the court to make a complete determination of the controversy. The circuit court denied plaintiffs' motion. We find no abuse of discretion.

¶ 58        As discussed earlier in this opinion, though, plaintiffs have since developed a conflict with the shareholders they purport to represent requiring dismissal of their third amended complaint against the inside directors; we are affirming the dismissal order but modifying it to require that notice be given to the other shareholders of record on the date of dismissal and that they be given a time limit within which they may intervene and carry on the litigation against the inside directors.

¶ 59                    C. Plaintiffs' Appeal of the Order Dismissing Their
                            Claims Against the Outside Directors

¶ 60        The circuit court dismissed plaintiffs' breach of fiduciary duties claims against the outside directors in count III of their second amended complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2010)). In ruling on a section 2-615 motion, the circuit court must accept as true all well-pled facts in the complaint and all reasonable inferences therefrom. *Tucker v. Soy Capital Bank & Trust Co.*, 2012 IL App (1st) 103303, ¶ 17. The critical inquiry is whether the allegations of the complaint, when construed in the light most favorable to plaintiffs, are sufficient to establish a cause of action upon which relief may be granted. *Id.* Our standard of review is *de novo*. *Id.*

¶ 61        To state a claim for breach of fiduciary duties, plaintiffs must allege the existence of a fiduciary duty, a breach of that duty, and damages proximately caused by the breach. *Id.* ¶ 21. In a corporate setting, a fiduciary has the duty to act with utmost loyalty and good faith when managing the corporation. *Tully v. McLean*, 409 Ill. App. 3d 659, 682 (2011).

¶ 62        In count III of their second amended complaint, plaintiffs alleged that the outside directors breached their fiduciary duties to the Packer Companies and to the shareholders by resigning from the board. However, the Business Corporation Act of 1983 provides that "[a] director may resign at any time by giving written notice to the board of directors, its chairman, or to the president or secretary of the corporation." 805 ILCS 5/8.10(g) (West 2010). Plaintiffs cite no Illinois case law holding that a director's mere resignation from the board, without more, constitutes a breach of fiduciary duty, nor have plaintiffs made any arguments that we should be the first Illinois case to so hold.

¶ 63        Rather, plaintiffs alleged in their second amended complaint, and argue on appeal, that the outside directors' act of resignation constituted a breach of their fiduciary duties under the unique facts of this case, because by resigning they failed to complete the independent special committee's investigation into the inside directors' alleged financial misconduct, thereby enabling Dr. Packer to continue exercising his control over the Packer Companies and to ultimately terminate Dr. Koehler's employment.[3]

_____

[3]On appeal, plaintiffs argue for the first time that the outside directors breached their fiduciary duties *prior* to their resignation from the board. Plaintiffs forfeited review by failing to plead these

- 11 -

¶ 64    Plaintiffs cite out-of-state and federal cases holding that officers and directors of a corporation breach their fiduciary duties by resigning and electing successors who they know will loot the corporation (*Gerdes v. Reynolds*, 28 N.Y.S.2d 622 (Sup. Ct. 1941)) and by taking no steps prior to resignation to prevent a transaction they know will be dangerous to the corporation (*Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345 (5th Cir. 1989)).

¶ 65    The circumstances of this case are entirely different from those in *Gerdes* and *Xerox*. Plaintiffs here pled that Dr. Koehler first informed the board in December 2009 about the significant New Vermillion-related expenses and debt that TPG, at Dr. Packer's direction, had assumed. There is no allegation that the outside directors knew of these expenses prior to the December 2009 board meeting. On March 16, 2010, plaintiffs sent a letter to TPG demanding the formation of a special committee of the board to investigate Dr. Packer's involvement with New Vermillion. Two days later, on March 18, 2010, Dr. Hockman, in her capacity as vice-chair of the board, sent a letter to plaintiffs stating she had discussed the March 16 demand letter with TPG's senior management and they were convening a special meeting of the board at which she would recommend an independent investigation of Dr. Packer's financial dealings with New Vermillion. On April 6, 2010, the board appointed an independent special committee comprised of the outside directors (including Dr. Hockman). The outside directors pursued the investigation by contacting auditors to conduct an audit investigation of TPG, but Dr. Packer refused to guarantee that the auditors would have complete access to all the necessary books and records, and he attempted to shut down the investigation. The outside directors responded by demanding Dr. Packer's and Ms. Sartain's resignation; however, they refused to resign. Concerned that Dr. Packer was controlling the information provided to the auditors and would not allow an accurate audit of TPG's financials, the outside directors resigned from the board.

¶ 66    Plaintiffs did not allege in their second amended complaint that the outside directors had any knowledge that imminent harm to plaintiffs or the Packer Companies would be caused by their resignation or that Dr. Koehler would be terminated. Nor were there any allegations that the outside directors engaged in any conduct which caused plaintiffs or the Packer Companies harm after their resignation. On these facts, we agree with the circuit court's finding that plaintiffs failed to state a cause of action for breach of fiduciary duties against the outside directors, and affirm the dismissal of their claims in count III of the second amended complaint against the outside directors.

¶ 67    Plaintiffs contend that the dismissal should not have been with prejudice and that they should have been given an opportunity to amend their second amended complaint against the outside directors. The decision whether to dismiss an action with or without prejudice rests within the sound discretion of the court and will not be disturbed absent an abuse of discretion. *Swanson v. Board of Police Commissioners*, 197 Ill. App. 3d 592, 609 (1990). The circuit court committed no abuse of discretion in dismissing count III of the second amended complaint against the outside directors with prejudice, where plaintiffs offered the circuit court no potential amendments that would have cured its defects. See *Bellik v. Bank of America*, 373 Ill. App. 3d 1059, 1066 (2007).

---

allegations in their second amended complaint. *Keefe-Shea Joint Venture v. City of Evanston*, 332 Ill. App. 3d 163, 170 (2002).

¶ 68                           D. Plaintiffs' Appeal of the Order Striking Their
                                          Prayer for Attorney Fees

¶ 69          Although plaintiffs' notice of appeal states that they are appealing the May 16, 2013, order
       striking their request for attorney fees in their second amended complaint, plaintiffs
       acknowledge on appeal that the circuit court allowed them to file a third amended complaint in
       which they sought recovery of their attorney fees under the common fund doctrine. The
       common fund doctrine provides that if a plaintiff in a shareholders' derivative action is
       successful and the benefit goes to the corporation, the plaintiff is entitled to recover his
       necessary expenses and disbursements, including attorney fees. See *De Fontaine v. Passalino*,
       222 Ill. App. 3d 1018, 1033-34 (1991). The circuit court dismissed plaintiffs' third amended
       complaint (including its request for attorney fees), finding that plaintiffs lacked standing and
       were disqualified due to their conflicts of interest with the parties they purported to represent.
       Plaintiffs' only argument on appeal with regard to attorney fees is that, in the event of reversal
       of the dismissal of their third amended complaint, they again should be allowed to seek
       recovery of their attorney fees under the common fund doctrine. As discussed earlier in this
       opinion, we are reversing the finding that plaintiffs lacked standing and affirming the finding
       that plaintiffs had a disqualifying conflict of interest but modifying the dismissal order to
       require that notice be given to the other shareholders of record on the date of dismissal and that
       they be given a time limit within which they may intervene and carry on the litigation against
       the inside directors. In the event new shareholders intervene to carry on the litigation against
       the inside directors, they may seek attorney fees under the common fund doctrine. We make no
       finding regarding the merits of the attorney fees claim.

¶ 70          For the foregoing reasons, we reverse the finding of lack of standing, affirm the dismissal
       order as modified, and remand for further proceedings.

¶ 71          Affirmed as modified in part, reversed in part, and remanded.

- 13 -