# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IN RE FACEBOOK, INC. DERIVATIVE LITIGATION | ) ) | **Consolidated** **C.A. No. 2018-0307-JRS** |

## ORDER REFUSING APPLICATION FOR CERTIFICATION OF INTERLOCUTORY APPEAL

WHEREAS, two competing teams of stockholder plaintiffs and their counsel sought to be appointed to leadership roles in this consolidated derivative action brought on behalf of nominal defendant, Facebook, Inc. ("Facebook" or the "Company");

WHEREAS, the Court issued an Order on October 5, 2021 (the "Order"),[1] in which it appointed Plaintiffs, California State Teachers' Retirement System, City of Birmingham Retirement and Relief System, and Construction and General Building Laborers' Local Union No. 79 General Fund, as co-lead plaintiffs, and Pricket Jones & Elliott, P.A., Kaplan Fox & Kilsheimer LLP and Scott+Scott Attorneys at Law as co-lead counsel (collectively, the "CalSTRS Group");

WHEREAS, on October 15, 2021, Plaintiffs, Employees' Retirement System of Rhode Island, City of Warwick Retirement System and their counsel (collectively,

---

[1] *In re Facebook, Inc. Deriv. Litig.*, 2021 WL 4552158 (Del. Ch. Oct. 5, 2021) (ORDER) (the "Order").

the "RI Group"), filed an application for certification of an interlocutory appeal of the Order (the "Application");

WHEREAS, the Application asserts two grounds for interlocutory appeal under Rule 42 of the Rules of the Supreme Court of the State of Delaware ("Rule 42"): (1) "[t]he interlocutory order involves a question of law resolved for the first time in this State," and (2) "[t]he decisions of the trial courts are conflicting upon the question of law"[2];

WHEREAS, on October 25, 2021, the CalSTRS Group opposed the Application; and

WHEREAS, the Court having considered the Application, the CalSTRS Group's opposition and the criteria set forth in Rule 42;

**IT IS HEREBY ORDERED**, this 2nd day of November, 2021, that:

1.      Rule 42(b)(i) provides that "[n]o interlocutory appeal will be certified by the trial court or accepted by the Court unless the order of the trial court decides a substantial issue of material importance that merits appellate review before a final

---

[2] Supr. Ct. R. 42(b)(iii)(A)–(B); R.I. Gp.'s Appl. for Certification of Interlocutory Appeal ("Appl.") (D.I. 235) at 8. I recognize that the proposed order submitted with the Application also cites Supr. Ct. R. 42(b)(iii)(H) ("Review of the interlocutory order may serve considerations of justice"), but that provision is not discussed in the Application. Response of CalSTRS Pls. to R.I. Gp.'s Appl. for Certification of Interlocutory Appeal ("CalSTRS Response") (D.I. 238) at 11. Accordingly, I do not address it further here.

judgment."[3]  Instances where the trial court certifies an interlocutory appeal "should be exceptional, not routine, because [interlocutory appeals] disrupt the normal procession of litigation, cause delay, and can threaten to exhaust scarce party and judicial resources."[4]  For this reason, "parties should only ask for the right to seek interlocutory review if they believe in good faith that there are substantial benefits that will outweigh the certain costs that accompany an interlocutory appeal."[5]

2.      When determining whether to certify an interlocutory appeal, the trial court should consider the eight factors stated in Rule 42(b)(iii) and "identify whether and why the likely benefits of interlocutory review outweigh the probable costs, such that interlocutory review is in the interests of justice.  If the balance is uncertain, the trial court should refuse to certify the interlocutory appeal."[6]

3.      As explained below, the Order does not "involve[] a question of law resolved for the first time in this State."[7]  Nor does it create or reflect a conflict of

---

[3] Supr. Ct. R. 42(b)(i).

[4] Supr. Ct. R. 42(b)(ii).

[5] *Id.*

[6] Supr. Ct. R. 42(b)(iii).

[7] Supr. Ct. R. 42(b)(iii)(A).

3

authority on a question of law.[8] The RI Group's arguments to the contrary are rejected for the reasons stated below.

4. *First*, as a general matter, leadership decisions are rarely (if ever) good fodder for interlocutory appeal.[9] As the Order demonstrated, choosing lead plaintiff(s) and lead counsel in representative litigation involves the consideration of several factors that are weighed by the court to answer the "ultimate question of what is in the best interests of the plaintiff class."[10] It would take truly exceptional circumstances to justify an interlocutory appeal of a discretionary decision of this sort—exceptional circumstances that, in my view, are not present here.

5. *Second,* the Order did not break from established Delaware precedent. The RI Group's contention that "this Court has now held—for the first time—that there is no inherent conflict in allowing plaintiff's counsel who are litigating derivative claims on behalf of a Delaware corporation to simultaneously represent

---

[8] Supr. Ct. R. 42(b)(iii)(B).

[9] *E.g.*, *Buttonwood Tree Value P'rs, L.P. v. R.L. Polk & Co.*, 2021 WL 4958253 (Del. Ch. Oct. 26, 2021) (declining to certify interlocutory appeal regarding leadership decision); *In re Tesla Motors, Inc.*, 2018 WL 2006678 (Del. Ch. Apr. 27, 2018) (same). Indeed, according to the CalSTRS Group, our Supreme Court has never accepted an interlocutory appeal regarding a leadership decision. CalSTRS Response at 3. I, likewise, have found no such decision.

[10] *In re Delphi Fin. Gp. S'holder Litig.*, 2012 WL 424886, at *1 (Del. Ch. Feb. 7, 2012); *see also Hirt v. U.S. Timberlands Serv. Co. LLC*, 2002 WL 1558342, at *2 (Del. Ch. July 3, 2002) (identifying the factors applied).

4

different clients in other actions who assert direct claims for monetary damages against that same corporation" reflects either a clear misunderstanding or misrepresentation the Court's decision.[11] The Order explicitly noted that "this court has recognized" that a conflict may exist "when a law firm seeks to represent both a derivative plaintiff on behalf of a corporation and a class plaintiff in direct litigation against the same corporation."[12] The Court then observed that while the potential for a disabling conflict exists in such circumstances, "that is not always the case."[13] Contrary to the RI Group's suggestion, this observation was neither novel nor groundbreaking.[14]

---

[11] Appl. at 1–2.

[12] Order at *4.

[13] *Id.*

[14] *See, e.g.*, *In re Ebix, Inc. S'holder Litig.*, 2014 WL 3696655, at *18 (Del. Ch. July 24, 2014) (stating that bringing both direct and derivative claims did not amount to a "disabling conflict"); *In re Tesla Motors S'holder Litig.*, 2018 WL 1560293, at *2 (Del. Ch. Mar. 28, 2018) (allowing plaintiffs and their counsel to bring both direct and derivative claims in the same action); *TCW Tech. Ltd. P'ship v. Intermedia Commc'ns, Inc.*, 2000 WL 1654504, at *4 (Del. Ch. Oct. 17, 2000) (recognizing that, in determining leadership in that case, "none of the claims are internally inconsistent or conflict with the legal theories supporting any other claim" despite the fact that "[t]he derivative and class claims all arise from the same basic facts"); *In re Oracle Corp. Sec. Litig.*, 2005 WL 1030215, at *1 (N.D. Ca. Apr. 22, 2005) ("[T]he Court finds that Defendants have not demonstrated that an actual conflict has ripened out of the mere theoretical conflict presented . . . ."); *In re Dayco Corp. Deriv. Sec. Litig.*, 102 F. R. D. 624, 630 (S.D. Ohio 1984) ("[T]he case law is *virtually unanimous* in holding that one counsel can represent a stockholder bringing *both* an individual *and* a derivative action.") (first emphasis added, other emphasis in original). The RI Group attempts to distinguish *Ebix* and *Tesla* on the basis that the claims in those cases were "brought by the same clients" and "involved claims brought in the same action." Appl. at

5

6.      The RI Group, however, contends that the Court's Order conflicts with *Duke Energy*,[15] *Affiliated Computer Services*,[16] *Yahoo!*,[17] and a host of federal and

---

10. According to the RI Group, this dynamic made it "less likely that any conflict would arise" and made it "easier for the Court to monitor and guard against conflicts." *Id.* While that may be correct, the fact that there is less of a chance for a conflict or that some circumstances make it easier for the court to monitor conflicts does not refute the point that determining the existence and extent of conflicts between derivative and direct claims involves a case-by-case analysis that will inevitably yield different outcomes in the context of selecting lead counsel.

[15] *In re Duke Energy Corp. Deriv. Litig.*, 7705-CS (Del. Ch. Dec. 21, 2012) (TRANSCRIPT) (Appl., Ex. H). As the RI Group acknowledges, I addressed the language in *Duke Energy* relied upon by the RI Group in footnote 23 of the Order. Having reviewed *Duke Energy* anew, I remain satisfied that, despite the concerns expressed by then-Chancellor Strine in that case, the court did not endorse a *per se* rule of disqualification or provide any basis to conclude that disqualification would be required in this case. *Duke Energy* is circumstantially distinct, and the language cited by the RI Group is dicta. *See id.* at 20–21 (stating that proving Company directors failed to disclose material facts in breach of their duties in one suit "could help the [proposed] class [but] injure [the Company]" in the other suit); CalSTRS Response at 8–9 ("[In *In re Duke*], if the plaintiffs were successful in their claims to seek a derivative recovery on *behalf* of a company, they would simultaneously be providing the evidence needed by securities plaintiffs to win their claims to obtain a monetary recovery *from* the company.").

[16] *Brandin v. Deason* (*"Affiliated Computer Services"*), 2123-VCL (Del. Ch. May 9, 2007) (TRANSCRIPT) (Appl., Ex. G). In *Affiliated Computer Services*, "counsel asserting a derivative claim also [sought] to prosecute direct claims relating to a proposed merger that could extinguish the derivative claims." Resp. of CalSTRS Pls. to Appl. for Leadership by R.I. Pls. (D.I. 217) at 12; *Affiliated Computer Services* at 10 ("[The defendant directors] have an incentive to agree to a transaction to avoid potential liability for backdating . . . ."); *id.* at 16 ("I think it really can't be denied, that there is a commonality of significant issues between the derivative case and the transactional case."). The conflict concerns identified in *Affiliated Computer Services* are not present here, and the RI Group made no effort to argue otherwise in resisting the CalSTRS Group's leadership application.

[17] *Police and Fire Retirement Sys. of the City of Detroit v. Yahoo!, Inc.*, 3561-CC (Del. Ch. Mar. 4, 2008) (TRANSCRIPT) (Appl., Ex. I). *Yahoo!* does not recognize, either explicitly or implicitly, a *per se* rule prohibiting direct and derivative claims from being brought by the same counsel or plaintiffs. At most, the language cited by the RI Group

other state court decisions.[18]  I disagree.  In these cases—even those where the court determined that a conflict existed—the courts' analyses reflect that the conflict inquiry is fact-intensive; the prevailing view expressed in most of these decisions is that there is no *per se* disabling conflict whenever counsel represents plaintiffs bringing direct claims against the company on whose behalf counsel seeks to prosecute derivative claims.[19]  Indeed, some of the cases from other jurisdictions the RI Group touts as supporting interlocutory appellate review actually make the point the RI Group has chosen to ignore—that "courts engage in a fact intensive analysis to determine whether a conflict of interest exists under the circumstances of a

---

suggests that Chancellor Chandler was concerned that the specific direct claims being pursued in a California federal court could "put[] the . . . firm in a bind" regarding "the potential for a stay of discovery and so forth there versus moving this litigation forward here."  *Id.* at 41–42.  Put simply, "*Yahoo* centered on concerns over a PSLRA litigation stay," which are not even remotely implicated by this case.  CalSTRS Response at 9 n.8.

[18] Appl., Ex. B.

[19] *E.g.*, *In re Altria Gp., Inc. Deriv. Litig.*, 2021 WL 2566758, at *3 (E.D. Va. May 13, 2021) (stating that "the possibility of a conflict of interest *weighs* against the appointment of [one law firm] as lead counsel") (emphasis added) (cited in Appl. at 6 n. 12); *Axial Vector Engine Corp. v. Transporter, Inc.*, 2007 WL 9808124, at *4–5 (D. Or. Feb. 20, 2007) (analyzing the facts and claims before it, including that the plaintiffs "lack[ed] a personal commitment to the derivative action," before disqualifying counsel) (cited in Appl., Ex. B at 4); *Caulfield v. Packer Gp., Inc.*, 56 N.E.3d 509, 521 (Ill. App. Ct. 2016) (noting that "a shareholder may bring a derivative action and an individual claim at the same time" before holding that "plaintiffs each have a direct conflict with their fellow shareholders in the derivative lawsuit") (cited in Appl., Ex. B at 5).

particular case" and "have stopped short of implementing a *per se* rule."[20] Most importantly here, the RI Group has not pointed to a single Delaware case where the court has announced a rule that a law firm prosecuting a direct claim against a company can never, come what may, represent that same company in derivative litigation. Thus, I am persuaded that the Order's determination neither "involve[d] a question of law resolved for the first time in this State" nor "conflict[ed]" with Delaware law.[21]

7.     *Third*, the RI Group ignores the fact that the Court has the authority (and responsibility) to oversee lead counsel in derivative cases throughout the pendency of the litigation. Indeed, this very fact was emphasized in the Order.[22] If, at any point, the Court believes that impermissible conflicts have arisen that will prevent lead counsel from providing adequate representation, the Court retains the authority to adjust the make-up of lead counsel as warranted.

---

[20] *ShareGood Water Co., Inc. v. U.S. Bottling Co.*, 2009 WL 2461689, at *4 (D. Md. Aug. 10, 2009) (cited in Appl., Ex. B at 1); *see also Beckworth v. Bizier*, 138 F. Supp. 3d 144, 152 (D. Conn. 2015) ("[Controlling law] does not hold that a plaintiff with possible individual claims against the corporation can never fairly and adequately represent other shareholders . . . .") (cited in Appl., Ex. B at 1.).

[21] Supr. Ct. R. 42(b)(iii)(A)–(B).

[22] Order at *5.

8. *Fourth*, finally, and perhaps most importantly, it must be emphasized that the whole purpose of selecting lead counsel is to advance the best interests of stockholders.[23] Conflicts, if they exist, are important in this context because they undermine the effectiveness of counsel in the representation of the nominal defendant company and its stockholders.[24] In this case, the Court selected the CalSTRS Group primarily because their complaint gave those they represent the best chance to succeed in the litigation, and the flagged "conflict" appeared to be more an attempt by the RI Group to gain the advantage in the lead counsel contest than to advance the best interests of Facebook and its stockholders.[25] The crux of the Order was that I was unwilling to deprive the Company and its stockholders of a plainly superior complaint because of remote, hypothetical conflicts that have not—and likely will not—come to fruition, especially when the Court retains the power (and duty) to address such conflicts should they arise.[26] As the Order made plain, I do

---

[23] *Id.* at *1 ("[E]ach factor is given weight only to the extent that it bears on the ultimate question of what is in the best interests of the plaintiff class.") (citing *In re Delphi*, 2012 WL 424886, at *1).

[24] *See Hirt*, 2002 WL 1558342, at *2 (describing the third factor to be considered in the selection of lead plaintiff and lead counsel as "the willingness and ability of all the contestants to litigate vigorously on behalf of an entire class of stockholders").

[25] Order at *3–5.

[26] *Id.* at *5 ("I am not persuaded that the very remote potential for conflicts overrides the CalSTRS Group's superior application such that the Company and its stockholders should be deprived of the strengths of the CalSTRS Group's complaint."). Specifically, the Court reviewed the identified cases where Scott+Scott and Kaplan Fox represent parties bringing

9

not believe disqualification of the CalSTRS Group's lead counsel at this time would be in the best interests of the Company and its stockholders.

9. The RI Group put its complaint (and the litigation strategy it reflected) up head-to-head against the complaint and strategy devised by the CalSTRS Group. For the reasons explained in the Order, it lost that contest. I cannot certify that the fact-intensive determination to that effect, as reflected in the Order, is a proper subject of interlocutory appellate review. More specifically, I cannot certify that the likely benefits of interlocutory review outweigh the probable costs, such that interlocutory review is in the interests of justice. Defendants' application for certification of interlocutory appeal, therefore, must be **REFUSED**.[27]

---

direct claims against Facebook. *Id.* at *4 (stating that the Court "review[ed] the direct claims asserted by the CalSTRS Group's counsel against Facebook"); Appl. at 2–3 (describing *In re Facebook Internet Tracking Litig.*, No. 5:12-MD-2314-EJD (N.D. Cal.); *Styleform IT v. Facebook, Inc., et al.*, No. CGC-18-571075 (Cal. Sup. Ct.); and *Klein v. Facebook, Inc.*, 20-CV-08570-LHK (N.D. Cal.)); R.I. Gp.'s Leadership Appl. (D.I. 195) at 1, 5–6 (arguing that these cases prevent the CalSTRS Group from serving as lead counsel and plaintiff); R.I. Gp.'s Opp'n to Appl. for Appointment of Lead Pls. and Co-Lead Counsel (D.I. 211) at 1–2 (describing *Casey v. Facebook, Inc.*, 5:18-cv-01780 (N.D. Cal.)). In the Application, the RI Group suggests that the Court erred because Scott+Scott's cases assert direct claims with allegations that "overlap[]" with the present case. Appl. at 3; Appl., Ex. A. After review, I remain satisfied that "counsel is not asserting claims in those cases that are internally inconsistent with the claims being asserted in this derivative action." Order at *4; *see In re Ebix*, 2014 WL 3696655, at *18 ("Here, however, there does not appear to be the potential for . . . disabling conflict because the claims are not internally inconsistent.").

[27] *See* Supr. Ct. R. 42(d)(iv)(D) (directing that the notice of appeal to the Supreme Court attach "[t]he order, if any, of the trial court certifying or *refusing* to certify the interlocutory appeal") (emphasis supplied).

_____*/s/ Joseph R. Slights III*_____
Vice Chancellor